**Linda GEAR, Plaintiff,**

v.

**CITY OF DES MOINES et al., Defendants.**

Civ. No. 79–108–1.

United States District Court,
S. D. Iowa, C. D.

May 22, 1981.

Shirley G. Steele, Des Moines, Iowa, for plaintiff.

Earl W. Roberts, City Sol., Des Moines, Iowa, for defendants.

## MEMORANDUM OPINION AND ORDER

STUART, Chief Judge.

This matter is before the Court pursuant to defendants' motion for summary judgment, filed May 5, 1981, and resisted by plaintiff on May 11, 1981. Said motion came on for hearing before the Court on May 11, 1981. Having carefully considered the file in the above-entitled case together with the arguments of counsel, and being otherwise fully advised in the premises, the Court enters the following Order.

Ms. Gear seeks relief under 42 U.S.C. §§ 1983 and 1985, as well as the due process clause of the Fourteenth Amendment, for her allegedly discriminatory discharge. As delineated in the amended complaint, the factual issues which form the basis for plaintiff's constitutional challenge are as follows: (1) the circumstances surrounding plaintiff's failure to report to work in October of 1978, and whether she voluntarily terminated her employment with the Des Moines Police Department shortly thereafter; (2) whether Lieutenant Paul Gillespie made sexual advances toward or otherwise harassed plaintiff; (3) whether Ms. Gear was compelled to request permission of male superiors before leaving her work station to utilize restroom facilities; (4) whether plaintiff's final paycheck was wrongfully withheld; (5) whether her work schedule was revised without notice; and (6) whether Police Chief Wendell Nichols was directly responsible for creation of an allegedly biased and prejudicial attitude toward women, which tended to encourage the conduct described above.

It is defendants' contention, premised on the Supreme Court's recent decision in *Allen v. McCurry*, —— U.S. ——, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), that the issues of fact previously enumerated were either dispositive of or essential to matters previously determined by a hearing officer of the Iowa Department of Job Service in a contested case proceeding conducted pursuant to the provisions of the Iowa Administrative Procedure Act, Chapter 17A of the 1977 Iowa Code. Accordingly, defendants urge application of principles of issue preclusion to bar plaintiff's reassertion of the identical issues raised collaterally.

By way of response, plaintiff argues that *Allen* is inapposite to the case at bar, since the Supreme Court's holding accords a preclusive effect in section 1983 actions to state judicial proceedings alone. Citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), plaintiff further maintains that she is not estopped from relitigating those factual questions attendant upon her discharge which were resolved against her by the state administrative officer, for the reason that said officer did not consider whether defendants'

conduct deprived her of constitutional protections.

There is no dispute between the parties as to the procedural history of this lawsuit. Following termination of her employment with the Des Moines Police Department in October of 1978, Ms. Gear applied to the Iowa Department of Job Service for unemployment compensation. Benefits were denied by a claims deputy on the basis of his finding that plaintiff had left her employment voluntarily and without good cause which could be ascribed to the employer within the meaning of section 96.5(1) of the 1977 Iowa Code. An appeal was thereafter taken, and an evidentiary hearing held on December 21, 1978.

In accordance with section 96.6(3) of the Iowa Employment Security Act, the department hearing officer conducted the proceeding under guidelines outlined in the Iowa Administrative Procedure Act, Chapter 17A. All parties were notified of the hearing, given an opportunity to offer both oral and documentary evidence and argument and to secure legal representation. While plaintiff did not retain counsel, she appeared at hearing and presented witnesses who testified on her behalf, as did defendants.

After weighing conflicting evidence relevant to the cause for plaintiff's separation from employment, the hearing officer ruled that plaintiff had not established that said separation was attributable to the employer under section 96.5(1). This adverse ruling became a final administrative order within fifteen days by virtue of plaintiff's failure to appeal to the department appeal board. Judicial review in state district court was not sought, although statutorily provided for. Thereafter plaintiff commenced this action to redress alleged deprivations of constitutional rights guaranteed by sections 1983 and 1985 based on the same alleged acts.

■ Generally speaking, the term "collateral estoppel" refers to the judicially-promulgated policy of repose preventing relitigation of a particular dispositive fact which was necessarily or actually decided with finality in a previous suit involving at least one of the parties on a different cause of action. See *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 910 (1979). In *Allen v. McCurry*, supra, the Supreme Court adopted the view that the concepts of res judicata and collateral estoppel apply fully to suits initiated pursuant to section 1983, but reiterated the well-established axiom that judicial rules of preclusion should not be inexorably enforced against a party to a prior proceeding when a "full and fair" opportunity to litigate a specific issue in that proceeding was lacking. *Allen v. McCurry*, 101 S.Ct. at 415, citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–329, 91 S.Ct. 1434, 1442–1443, 28 L.Ed.2d 788 (1971).

While courts were at one time reluctant to extend the doctrine of res judicata, of which collateral estoppel is a component, see Restatement (Second) Judgments XV (Tent.Draft No. 1, 1973), to administrative decisions, this attitude has since been modified. In 1966, the Supreme Court expressly applied the doctrine in the administrative law context, stating:

> When an administrative agency is acting in a judicial capacity, and resolves disputed questions of fact properly before it which the parties have had an opportunity to litigate, the courts have not hesitated to enforce repose. (Citations omitted.)

*United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 421, 422, 86 S.Ct. 1545, 1559, 1560, 16 L.Ed.2d 642 (1966). See *Industrial Commission of Wisconsin v. McCartin*, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947). Relitigation of factual issues determined by the Board of Advisory Appeals was thus barred in a subsequent suit for breach of contract where (1) the Board was functioning as an adjudicative body when it considered those issues, (2) such issues were properly before the Board, and (3) both parties were afforded a "full and fair opportunity to argue their version of the facts and an opportunity to seek court review of any adverse findings." *Id.* 384 U.S. at 422, 86 S.Ct. at 1560. Based on

the foregoing factors, the court concluded, "There is, therefore, neither need nor justification for a second evidentiary hearing on those matters already resolved as between these two parties." *Id.*

Bearing in mind that the doctrine of collateral estoppel should be employed more selectively and with a greater degree of flexibility when an administrative finding is involved, see *United States v. Smith*, 482 F.2d 1120, 1123 (8th Cir. 1973); *Grose v. Cohen*, 406 F.2d 823, 824–825 (4th Cir. 1969); *Housworth v. Glisson*, 485 F.Supp. 29, 34 (N.D.Ga.1978), aff'd, 614 F.2d 1295 (5th Cir. 1980), the inquiry herein must therefore focus upon whether the issues sought to be estopped were within the statutory jurisdiction of a state agency acting in a judicial capacity, where both parties were provided a fair opportunity to litigate said issues and to appeal the administrative decision to a judicial tribunal. Additional related factors which must figure in the Court's analysis include the deference accorded opinions of a particular administrative entity by the state courts, the intention of that entity and the expectations of the parties regarding judicial retrial of factual questions determined in administrative proceedings. See *Taylor v. New York City Transit Authority*, 309 F.Supp. 785, 791 (S.D.N.Y.1970), aff'd sub. nom., 433 F.2d 665 (2d Cir.). See also *Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 269 (2d Cir. 1977).

Under the circumstances of this case, the Court is persuaded that the agency adversarial process was adjudicative in nature. *United States v. Utah Construction and Mining Co.*, supra. See *Taylor v. New York City Transit Authority*, 433 F.2d 665, 667 (2d Cir. 1970). Section 17A.12 of the 1977 Iowa Code required that written notice specifying the particular statutory and rule sections involved and the matters in issue was to be served upon all parties, either by personal service, as in civil actions, or by certified mail. See *Groom v. Kawaski Motors Corp.*, 344 F.Supp. 1000, 1002 (W.D.Okl. 1972). All subpoena powers conferred by its enabling act or other statutes, in conjunction with those set forth in section 17A.13 were vested in the department. See *Id.* Discovery procedures applicable to civil actions could be utilized by all parties to a contested case under Chapter 17A.

Evidentiary rules mandating exclusion of irrelevant, immaterial or unduly repetitious evidence and prescribing the manner in which objections must be made and noted in the record were enforced. Admittedly, there was no statutory bar to admission of hearsay, however, this factor alone is not conclusive. See *Bowen v. United States*, 570 F.2d 1311, 1322 (7th Cir. 1978). Each party enjoyed the right to present evidence through documentation and examination of witnesses, to cross-examine opposing witnesses and to offer argument on all issues, see *Painters District Council No. 38 v. Edgewood Contracting Co.*, 416 F.2d 1081, 1084 (5th Cir. 1969); *Groom v. Kawaski Motor Corp.*, 344 F.Supp. at 1002, and to secure counsel. See *Taylor v. New York City Transit Authority*, 309 F.Supp. at 791. Plaintiff chose not to avail herself of the services of counsel, but introduced favorable witness testimony into the record and in general capably prosecuted her claim for benefits. In the aggregate, the foregoing indicia demonstrate that the hearing officer who evaluated plaintiff's claim performed an adjudicative role, weighing and assessing contradictory evidence and the relative credibility of the witnesses as would a trier of fact presiding in a judicial forum. See *Bowen v. United States*, 570 F.2d at 1322.

A provision for judicial review of the hearing officer's findings, once finalized when the time for appeal to the department appeal board expired, was incorporated in the statutory scheme. Section 17A.19 of the 1977 Iowa Code. See *United States v. Utah Construction and Mining Co.*, 384 U.S. at 422, 86 S.Ct. at 1560. In unemployment compensation cases, the reviewing court is bound by the agency's resolution of disputed facts as embodied in the record of contested case proceedings. See *Ritchey v. Iowa Employment Security Commission*, 216 N.W.2d 580, 584 (Iowa 1974) (discussing standard of judicial review). See also Be-

zanson, Judicial Review of Administrative Action in Iowa, 21 Drake L.Rev. 2, 42–51 (1971). Where no constitutional or statutory error was alleged, the court would uphold the final agency action unless, *inter alia,* such action was "unsupported by substantial evidence in the record made before the agency when the record is reviewed as a whole." Section 17A.19(8)(f). No additional evidence could be introduced to supplement the agency record with respect to issues of fact entrusted to the agency's jurisdiction, in the absence of a showing of sufficient cause. Section 17A.19(7).

It is thus apparent that the expectations of the parties, the department itself and the state courts regarding the final effect to be given the hearing officer's factual determinations was stringently circumscribed by state statutory and decisional law, see *Taylor v. New York City Transit Authority,* 309 F.Supp. at 792, thereby lending plaintiff considerable incentive to diligently pursue her claim for unemployment compensation in the administrative tribunal. See *Bowen v. United States,* 570 F.2d at 1322–1323. This case is not like the situation described in *Lewis v. International Business Machines Corp.,* 393 F.Supp. 305, 308–309 (D.Or.1974), where the court concluded that a party-plaintiff to a diversity suit predicated upon an alleged breach of an employment contract was not estopped by an earlier agency rejection of his application for unemployment benefits where said party failed to appear at the second stage of a bifurcated hearing, was not represented by counsel, had not sought administrative review of an initial denial of benefits, and the state's law, both statutory and judicial, gave no warning that the agency's findings would exert a preclusive effect. Here, plaintiff appeared at hearing, obtained intra-agency review of a preliminary order entered by a department deputy and could reasonably foresee the future ramifications of the final agency action by virtue of the narrow scope of judicial scrutiny afforded administrative decisions rendered in contested case proceedings under Iowa law.

According to one commentator, collateral estoppel should be applied flexibly to avoid injustice where undue deference to agency findings, even where actually litigated or material to the initial administrative judgment, would inflict harsh, unforseeable consequences. Note, The Collateral Estoppel Effect of Administrative Agency Actions in Federal Civil Litigation, 46 Geo.Wash.L. Rev. 65, 83–84 (1976) (hereinafter cited as Collateral Estoppel Effect). Relying upon *Lewis v. International Business Machines Corp.,* supra, as illustrative of the following proposition, the author observed:

> A court should not accept a party's claim of unforeseeability as determinative. Rather, it should consider whether the civil action addresses conduct within the zone of agency concern as manifested in the agency enabling statute, procedures, and interpretive case law. If the conduct is within that zone and the issue was actually litigated and essential to the prior administrative judgment, a civil litigant should not prevail if it contends that the issues currently disputed were reasonably unforeseeable at the time of the earlier administrative decision.

Collateral Estoppel Effect, supra at 84.

There is no contention made in the case at bar that plaintiff could not fairly predict the binding outcome of the administrative determination, as was the case in *Lewis*; in fact, Iowa law provides to the contrary. In Oregon, unlike Iowa, information in a benefits claimant's agency file is "confidential and for use only in connection with the claim", see *Lewis v. International Business Machines Corp.,* 393 F.Supp. at 309, suggesting that the agency record could not be introduced in a collateral civil suit and thus could not function to estop relitigation of administratively resolved matters. Moreover, the pronounced adversarial structure of the Iowa contested case proceeding, in apparent contrast to the Oregon scheme, strongly encourages litigants to diligently endeavor to further their respective positions. See *id.* Each of the purely factual issues for which estoppel is sought in this lawsuit was, ultimately, within the agency's particular investigative and adjudicative expertise, thereby ensuring the adequacy of

factfinding procedures employed. See Collateral Estoppel Effect, supra, at 84, 88 n. 144.

The Court's discussion of a specific agency area of concern or expertise as it influences a party's incentive or opportunity to fully and fairly litigate his claim in an administrative setting leads to a third criterion identified by the Supreme Court in *Utah Construction*, which requires the Court to ascertain whether matters defendants seek to foreclose herein were properly before the Iowa Department of Job Service. See *United States v. Utah Construction and Mining Co.*, 384 U.S. at 422, 86 S.Ct. at 1560. Factual questions either addressed in or fundamental to the administrative ruling must have failed within the zone of agency interests embraced by the state unemployment compensation proceeding, as manifested in the Employment Security Act, Chapter 96 of the 1977 Iowa Code. It is obvious from the language of § 96.5(1) that the department hearing officer lawfully exercised subject matter jurisdiction over issues of fact fundamental to an assessment of the claimant employee's alleged involuntary separation, all of which comprise the grounds for Ms. Gear's civil rights complaint. See *Ritchey v. Iowa Employment Security Commission*, supra.

A traditional element of the collateral estoppel doctrine also requires the Court to determine whether the party invoking this policy of judicial repose has successfully demonstrated an identity between the issues in the present cause of action and those either conclusive or supportive of the judgment in the prior proceeding. See *Montana v. United States*, 440 U.S. at 153, 99 S.Ct. at 973. From a careful review of the record, the Court is convinced that material facts actually or necessarily adjudicated in the agency hearing form the sole predicate for plaintiff's constitutional challenge mounted in this Court. Conclusions that plaintiff's work schedule had not been revised without notice, thus justifying her failure to report for duty were implicit in the department hearing officer's adverse findings in the record as to Lieutenant Gil-

lespie's sexual harassment of the plaintiff, the allegedly wrongful withholding of a final paycheck, the necessity of requesting permission of male superiors to use the restroom, and the circumstances of her unexcused absences on the 27th, 28th and 29th days of October. As the hearing officer found these acts did not occur, Chief Nichols could not have fostered an environment which contributed to such alleged acts of individual sexual discrimination.

On the totality of the circumstances, therefore, the Court is of the opinion that each of the previously adjudicated facts sought to be estopped in the instant lawsuit were fully and fairly litigated by the parties in an administrative forum. See *United States v. Utah Construction and Mining Co.*, 384 U.S. at 422, 86 S.Ct. at 1560. Virtually the entire panoply of due process rights available in state civil actions were incorporated in Chapter 17A of the 1977 Iowa Code and thus protected parties to contested case proceedings. Plaintiff through counsel has conceded that there was no defect in the agency factfinding process or a constitutionally significant deprivation of procedural safeguards which would have raised impediments to an adequate opportunity to litigate her interests. Plaintiff was or reasonably should have been cognizant of the statutorily prescribed judicial deference accorded agency determinations in Iowa. Compare *Taylor v. New York City Transit Authority*, 433 F.2d at 671 (finality of agency decision favors application of rules of preclusion). In sum, collateral estoppel precepts enunciated in *Utah Construction* apply herein to bar readjudication of disputed issues of fact resolved in a state evidentiary hearing, where both litigants were notified, heard, introduced evidence and were afforded the opportunity to seek court review of adverse rulings.

This is not to suggest that the Court would in all instances employ principles of collateral estoppel to bar relitigation of factual issues resolved in prior administrative adjudications, for as Professor Davis points out:

[t]he sound view is therefore to use the doctrine ... when the reasons for it are present in full force, to modify it when modification is needed, and to reject it when the reasons against it outweigh those in favor.

K. Davis, Administrative Law Test, § 18.02 at 360 (1973). Thus if one or more of the *Utah Construction* requirements were not satisfied, a different result would obtain. Under the particular facts of this case, however, where all such requirements have been met, the underlying policy of administrative estoppel as articulated by the United States Supreme Court is fully effectuated.

■ Plaintiff argues that policy considerations underlying Title VII litigation should operate to prevent foreclosure of her section 1983 and 1985 claims in this Court. However, the circuit has questioned this premise in a related context, noting that while the unique procedural framework delineated in the federal Equal Opportunity Employment Act militates against application of the principles of res judicata and collateral estoppel to employment discrimination suits, the Act does not similarly restrict reliance upon traditional concepts of preclusion in section 1981 actions. See *Gunther v. Iowa State Mens' Reformatory*, 612 F.2d 1071, 1084 n.6 (8th Cir. 1980).

In the *Gunther* court's estimation, several crucial distinctions may be drawn between section 1981 and Title VII lawsuits with regard to extension of concepts of preclusion to opinions of administrative agencies. *Id.* For example, it has been determined that initial resort to state administrative remedies does not deprive the plaintiff of a right to a federal trial de novo on a Title VII claim, *id.*; see *Chandler v. Roudebush*, 425 U.S. 840, 844–846, 96 S.Ct. 1949, 1951–1952, 48 L.Ed.2d 416 (1976); *Alexander v. Gardner-Denver Co.*, supra, while this is not the case in section 1981 proceedings. See *Gilinsky v. Columbia University*, 440 F.Supp. 1120, 1122 (S.D.N.Y.1977). Congress expressly anticipated redress of injuries sustained through employment discrimination in several forums, see *Alexander v.*

*Gardner-Denver Co.*, 415 U.S. at 47–49, 94 S.Ct. at 1019–1020, whereas no such provision was included in the Civil Rights Act of 1866. Again, in contrast to Title VII, the civil rights statutes do not force a complainant into the "Catch-22 choice of complying with exhaustion requirements and barring a federal claim or bringing a federal claim and suffering dismissal for failure to exhaust." *Mitchell v. National Broadcasting Co.*, 553 F.2d at 276.

There is, in the Court's view, no valid rationale for distinguishing sections 1981, 1983 and 1985 for purposes of employing the foregoing analysis to permit collateral estoppel to serve as a barrier in federal court to relitigation of administratively determined issues of fact. See *Sinicropi v. Nassau County*, 601 F.2d 60, 62 (2d Cir. 1979). Instead, as Professor Davis points out, the precept of administrative collateral estoppel "is at its best as it applies to an adjudication of past facts." *Davis*, supra, at 362. Recently, the Supreme Court in *Allen v. McCurry*, supra, emphatically reaffirmed the proposition that the common law doctrines of collateral estoppel and res judicata are directly applicable to actions brought under section 1983. In the absence of countervailing considerations or policy arguments peculiar to the unique remedial scheme devised and enacted by Congress in Title VII, therefore, the Court deems it appropriate to accord collateral estoppel effect to the factual findings of the department hearing officer. Since such findings form the sole underlying premise of, and are thus dispositive of, plaintiff's civil rights claims, the Court will sustain defendants' motion for summary judgment and cause judgment to be entered in their favor.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment on the ground of collateral estoppel be and hereby shall be granted. The Clerk is directed to cause judgment to be entered in defendants' favor. Each party shall bear their respective costs incurred in litigation of the above-entitled action.