

# THE ATTORNEY GENERAL
## OF TEXAS

December 3, 1987

JIM MATTOX
ATTORNEY GENERAL

Mr. Henry B. Keene
Chairman
Board of Pardons and Paroles
P. O. Box 13401
Austin, Texas    78711

Mr. Vernon M. Arrell
Commissioner
Texas Rehabilitation
   Commission
118 E. Riverside Drive
Austin, Texas    78704

Opinion No. JM-830

Re:  Whether the Texas Com-
mission on Human Rights
may require a state agency
to "seal, remove, and/or
modify" documents contained
in the personnel file of an
individual found to be the
victim of discriminatory
action (RQ-1148)

Gentlemen:

You ask whether the Texas Commission on Human Rights
and/or the federal Equal Employment Opportunity Commission
(EEOC) may require an employer state agency to "seal,
remove, and/or modify" documents contained in the
personnel file of an employee believed to be the victim of
discriminatory action.  You explain that when a claim
before the state or federal commission is negotiated, the
commission frequently will order that the complainant's
personnel file be sealed or physically enclosed in an
envelope and marked with words to the effect that the
envelope shall only be opened by court order.  You ask
whether this action is prohibited by the Texas Open
Records Act, article 6252-17a, V.T.C.S., as interpreted in
Attorney General Opinion MW-327 (1981).

As indicated in Attorney General Opinion MW-327,
under the Open Records Act, all information held, as
described in section 3(a), by governmental bodies must be
released unless the information falls within one of the
act's specific exceptions to disclosure.  Section 5 of the
act directs the custodian of public records to preserve
public records from alteration. Section 12 makes the
willful destruction or alteration of public records a
misdemeanor. Attorney General Opinion MW-327 determined
that these provisions prohibit a state agency from
expunging references to an employment termination and
from altering the records to reflect that the employee
separated from the agency in a different manner.   It

should be noted, however, that these provisions refer to specific, willful actions. A criminal offense under section 12 necessarily depends on the state of mind of the actor in each case. Under the circumstances you present, a custodian of records could believe that the state or federal commission has the authority to order certain records sealed. The legal effect of this belief on the state of mind element of a criminal offense under the Open Records Act is not entirely clear. Because your question can be resolved by examination of the powers of the state and federal commissions, it is not necessary to resolve this question. Moreover, this office lacks jurisdiction to determine whether criminal offenses actually have occurred under the Open Records Act.

The first part of your question relates to the state commission. You ask whether the Texas Commission on Human Rights holds the authority to require state agencies to withhold certain information from public disclosure. As a general rule, state agencies hold only the authority granted expressly or by necessary implication in the Texas statutes and constitution. The purpose of the statutory scheme creating the commission is to encourage the voluntary resolution of claims. Frequently, the sealing of personnel records is part of the remedy sought by the victims of discrimination. Adverse and untrue or unfair comments or evaluations in personnel files may foreclose future promotions, salary increases, or employee benefits. With regard to claims involving private employers, no state statute, such as the Open Records Act, generally makes private employer records open to the public. The commission does not "require" or "order" the employer to close records; the commission simply refuses to approve a voluntary resolution of a discrimination claim unless the employer agrees to close the files. With regard to claims involving public employers, however, the state agency cannot simply agree to close records that are subject to the Texas Open Records Act.

It is well-established that a governmental body cannot close information by agency rule, see Industrial Foundation of the South v. Texas Industrial Accident Board, 540 S.W.2d 668, 677 (Tex. 1976), cert. denied, 430 U.S. 931 (1977). In the Industrial Foundation case, the Texas Supreme Court addressed the Industrial Accident Board's claim that certain requested information was excepted from mandatory disclosure by section 3(a)(1) of the Open Records Act because the information was deemed confidential under one of the board's rules. Section 3(a)(1) protects "information deemed confidential by law, either Constitutional, statutory, or by judicial

decision." The board asserted that its confidentiality rule had the force and effect of a statute. The board enacted the rule pursuant to its general rulemaking authority.

The court held that:

> While a rule may have the force and effect of a statute in other contexts, we do not believe that a governmental agency may bring its information within exception 3(a)(1) by the promulgation of a rule. To imply such authority merely from general rule-making powers would be to allow the agency to circumvent the very purpose of the Open Records Act. Absent a more specific grant of authority from the Legislature to make such a rule, the rule must yield to the statute. (Footnotes omitted.) (Emphasis added.)

540 S.W.2d at 677. In light of this decision, the commission must have a specific grant of authority to require state agencies to close certain records.

You both cite a particular provision in subsection (c) of section 6.01 of the Commission on Human Rights Act, article 5221k, V.T.C.S., as the basis for the commission's authority to order government personnel files sealed. Subsection (c) of section 6.01 provides:

> If, after an investigation, the executive director or his designee determines that there is reasonable cause to believe that the respondent has engaged in an unlawful employment practice, as alleged in the complaint, the executive director or his designee shall review the evidence in the record with a panel of three commissioners. If, after the review, at least two of the three commissioners determine that there is reasonable cause to believe that the respondent has engaged in an unlawful employment practice, the executive director shall issue a written determination incorporating his finding that the evidence supports the complaint and shall serve a copy of the determination on the complainant, the respondent, and other agencies as required by law. The commission shall endeavor to eliminate the alleged unlawful employment

> <u>practice by informal methods of conference, conciliation, and persuasion</u>. The commission, its executive director, or its other officers or employees may not make public, without the written consent of the complainant and respondent, information about the efforts in a particular case to resolve an alleged discriminatory practice by conference, conciliation, or persuasion, whether or not there is a determination of reasonable cause.  (Emphasis added.)

The underscored language tracks the language in section 706(b) of Title VII of the Civil Rights Act of 1964, as amended.  <u>See</u> 42 U.S.C. §2000e, <u>et seq.</u> The underscored language does not grant the commission the authority to require state agencies to seal documents.  Nor does it grant state agencies the authority to agree to seal documents.

No other provision in article 5221k grants the commission express authority to order state employers to seal records.  Subsections (6) and (10) of section 3.02 provide that the commission has the power:

> (6) to receive, investigate, seek to conciliate, and pass on complaints alleging violations of this Act, and file civil actions to effectuate the purposes of this Act;

and the power:

> (10)  to adopt, issue, amend, and rescind <u>procedural</u> rules to carry out the purposes and policies of this Act.  (Emphasis added.)

It is not clear whether a rule creating a remedy for a discrimination claim may be characterized properly as a "procedural" rule.  Moreover, as indicated by the <u>Industrial Foundation</u> case, the commission must have a specific grant of authority.

In contrast, subsection 7 of section 3.02 provides the commission with authority:

> to request and, if necessary, compel by subpoena the attendance of necessary witnesses for examination under oath or affirmation, and the production, for inspection and copying, of records, documents, and other

evidence relevant to the investigation of alleged violations of this Act. The commission by rule may authorize a commissioner or one of its staff to exercise the powers stated in this subdivision on behalf of the commission.

Thus, the commission has the authority to obtain certain records. A state agency may not use the Open Records Act to refuse to provide records to the commission. See also V.T.C.S. art. 5221k, §8.02(b). Additionally, section 8.01 expressly authorizes the commission to require certain employers to maintain certain records. No similar provision applies to closing records.

Subsection (a) of section 8.02 of the act provides:

An officer or employee of the commission may not make public any information obtained by the commission under its authority under Section 6.01 of this Act except as necessary to the conduct of a proceeding under this Act.

This provision directs the commission to withhold certain information obtained under section 6.01. Similarly, the last sentence in subsection (c) of section 6.01 prohibits the commission from disclosing, without consent from both of the parties, "information about the efforts in a particular case to resolve an alleged discriminatory practice" (emphasis added). Pre-existing information in a state agency's personnel file does not constitute information about efforts to resolve a discrimination claim. Thus, neither of these provisions provides express authority for the commission to order state agencies to seal certain of the agencies' personnel records.

Similar considerations apply to the federal Equal Employment Opportunity Commission (EEOC). The federal commission has the authority to investigate and attempt to resolve discrimination claims under Title VII of the Civil Rights Act by informal methods of conciliation. See 42 U.S.C. §§2000e-4(g), 2000e-5. Like the state commission's authority, which is based on the federal act, such efforts involve the voluntary actions of the parties involved. The EEOC has the authority to make findings of fact and to issue a reasonable cause determination on the existence of unlawful employment practices. See Benneci v. Department of Labor, New York State Division of Employment, 388 F. Supp. 1080 (S.D.N.Y. 1975). The dissemination of adverse references for discriminatory reasons is itself an

unlawful employment practice under the federal act. <u>Smith v. Secretary of Navy</u>, 659 F.2d 1113, 1121 (D.C. Cir. 1981). Consequently, if an employer refuses to refrain voluntarily from disseminating adverse employment records, the EEOC may refuse to approve the informal resolution. It may also decide to issue a reasonable cause determination. If all else fails, the EEOC may file a civil lawsuit against private[1] employers. <u>See</u> §2000e-5(f). Conciliation is, however, for obvious reasons, the preferred method for resolving claims. <u>See</u> <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. 36, 44 (1974).

Section 2000e-5 provides the EEOC's specific authority to prevent unlawful employment practices. Subsection (b) of section 2000e-5 provides, in part:

> Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge . . . within ten (10) days, and shall make an investigation thereof. . . . If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, <u>the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion</u>. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. (Emphasis added.)

---

1. The authority to file suit does not include "a government, governmental agency, or political subdivision named in the charge." <u>See</u> §2000e-5(f)(1).

This provision does not provide authority to <u>order</u> state agencies to close records subject to the Texas Open Records Act.

Neither this provision nor any other provision of the federal act expressly authorizes the EEOC to order state agencies to seal personnel records. This power is beyond the commission's authority to approve the <u>voluntary</u> resolution of discrimination complaints. The EEOC lacks the authority to authorize or require a state agency to ignore a state statute such as the Open Records Act. The EEOC has no power to adjudicate claims or impose administrative sanctions. <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. at 44. Responsibility for the enforcement of the act is vested in the federal courts. <u>Id.</u> See <u>also Sears, Roebuck & Co. v. Equal Employment Opportunity Commission</u>, 435 F.Supp. 751, 761 (D.D.C. 1977) (commission lacks authority to issue binding substantive rules).

A brief submitted on behalf of the Texas State Teachers Association notes that both the state act and the federal act upon which it is premised authorize the courts to order appropriate affirmative and equitable relief that includes sealing documents. <u>See</u> 42 U.S.C. §2000e-5(g); V.T.C.S. art. 5221k, §7.01(c); <u>see also</u> <u>Smith v. Secretary of Navy</u>, 659 F.2d 1113 (D.C. Cir. 1981); <u>Dual v. Griffin</u>, 446 F. Supp. 791 (D.D.C. 1977); <u>Sherkow v. Wisconsin Department of Public Instruction</u>, 17 F.E.P. 1527 (W.D. Wis. 1978). The Texas Commission on Human Rights also cites section 7.01(c) of the state act for the source of its authority under section 6.01 to conciliate voluntary resolution of claims. We have no doubt that expunction is an appropriate <u>judicial</u> remedy to afford relief under both the federal act and the state act. Because section 3(a)(7) of the Texas Open Records Act excepts from required public disclosure information sealed by court order, this judicial remedy is not in conflict with the Open Records Act. State agencies do not, however, hold the extensive powers held by the courts. Section 6.01 does not incorporate the powers granted to the courts in section 7.01(c). As indicated, the federal commission lacks authority to adjudicate claims or impose administrative sanctions.

This does not mean, however, that information relating to discrimination claims in the personnel files of state agencies must be disclosed to the public. Section 3(a)(1) of the Open Records Act protects information deemed confidential by law, including constitutional privacy and common-law privacy. <u>Industrial Foundation of the South v. Texas Industrial Accident Board</u>, 540 S.W.2d

at 682. One theory of common- law privacy is "false light in the public eye," a theory analogous to defamation. Id. A governmental body must withhold information under section 3(a)(1) on the basis of "false light" privacy if it finds that release of the information would be highly offensive to a reasonable person, that public interest in the information is minimal, and that there exists serious doubt about the truth of the information. Open Records Decision No. 438 (1986). Consequently, if the release of an employee's personnel file that contains discriminatory adverse comments or evaluations meets the above test, the state agency must withhold the information. See V.T.C.S. art. 6252-17a, §10(a) (prohibiting release of confidential information). Additionally, as noted in Attorney General Opinion MW-327, the state agency may include statements in the personnel file explaining the inaccuracy of existing comments or evaluations. Both the state and federal commission may refuse to approve conciliation agreements that refuse to include explanatory statements clarifying any adverse comments in personnel files held by state agencies.

## S U M M A R Y

In light of the Texas Open Records Act, article 6252-17a, V.T.C.S., state agencies must have specific authority to make information confidential. The Texas Human Rights Commission lacks the statutory authority under article 5221k, V.T.C.S., to require employer state agencies to seal documents contained in the personnel file of an employee believed to be the victim of discriminatory action. The federal Equal Employment Opportunity Commission lacks authority under the Civil Rights Act, 42 U.S.C. §2000e, et seq., to order state agencies to seal documents.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General